UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODORE J. KAMERLING,

      Plaintiff,

v.                                                                  Case No. 1:18-cv-697
                                                                  Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplement security income (SSI).

        Plaintiff suffered an injury in September 2004, when "while clearing wood and cutting down trees on his property . . . a tree the size of a Volkswagen, kicked back and landed on him." PageID.118-119. An administrative law judge (ALJ) entered a decision on May 1, 2009, which found that plaintiff was under a disability from September 26, 2004 through June 30, 2007. PageID.120. However, the disability ended on July 1, 2007, because plaintiff had improved and had the residual functional capacity (RFC) to perform the full range of light work, modified only by a restriction of "occasional rather than frequent stooping." PageID.122-123.

        Plaintiff filed a new claim in 2013. The ALJ held a hearing on November 25, 2014, and issued a decision denying benefits on December 17, 2014. PageID.57-81. The Appeals

1

Council remanded the case in an order dated March 7, 2016, which instructed the ALJ to address new evidence and other matters. The ALJ summarized plaintiff's present claim as follows:

> The claimant filed the present application on December 19, 2013 alleging disability beginning April 3, 2009, which the claimant subsequently amended to April 20, 2013 at the hearing, upon the advice of his representative. I find that the current claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final decision on the prior claim, and, as discussed in detail in the decision below, I find that the record contains new and material evidence that provides a basis for a different finding of the claimant's residual functional capacity. Therefore, although the claimant was limited to light work except for occasional stooping as of July 1, 2007 in the prior disability decision, I find that the claimant has additional restrictions regarding his ability to work. (Ex. B1A/12-13).

PageID.42.

The present action involves plaintiff's amended disability onset date of April 30, 2013. PageID.39, 346. Plaintiff identified his disabling conditions as: left arm pain; low back pain; left leg pain; carpal tunnel syndrome in right hand; and attention deficit hyperactivity disorder (ADHD). PageID.358. Prior to applying for DIB and SSI, plaintiff earned a GED and had past employment in sales. PageID.359. On remand, the ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 23, 2016. PageID.36-47.

## I.    LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.     ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of April 30, 2013, and met the insured status requirements of the Social Security Act through September 30, 2013. PageID.39. At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease; hip arthritis; ADHD; and adjustment disorder with mixed anxiety. PageID.39. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.40.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally stoop, kneel, crouch, and crawl but cannot climb vertical ladders, ropes, or scaffolds. He can have no exposure to hazards, such as machinery and unprotected heights. The claimant is limited to simple, routine tasks with short, simple instructions.

PageID.41. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.45.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.55-56. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the national economy including: mail clerk, in-house with a private organization (35,000 jobs); office helper (70,000 jobs); and assembly machine tender (25,000 jobs). PageID.46-47. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 30, 2013 (the amended alleged onset date) through August 23, 2016 (the date of the decision). PageID.47.

### III. DISCUSSION

Plaintiff set forth four issues on appeal:

**A. The ALJ's RFC did not take into account the concentration, persistence, and pace (CPP) limitations addressed in step three.**

Plaintiff contends that the decision is internally inconsistent because the ALJ found that plaintiff had moderate restrictions in CPP, but omitted the restriction from the RFC finding. The Court disagrees.

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing

5

of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§404.1525(d) and 416.925(d). If an ALJ finds that a claimant has failed to meet the requirements of a listed impairment, then the ALJ determines the claimant's RFC in a separate determination made at step four. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014).

Here, the CPP finding was made at step three of the sequential evaluation process when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of listed impairments 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders). PageID.40. The reference to CPP in "paragraph B" is written in the disjunctive, *i.e.*, to meet the listing by showing CPP, the claimant must have an extreme or marked limitation in the ability to "concentrate, persist *or* maintain pace." *See* Listings 12.04.B.3. and 12.06B.3. "Because three different functions [in paragraph 'B'] are listed in the disjunctive, a check in the moderate box does not indicate whether the limitation applies to one, two, or all three functions. . . the mental residual functional capacity assessment requires a more detailed assessment than the preliminary assessment used at steps 2 and 3 to determine whether the impairment is severe and meets a listing." *Kraus v. Colvin*, No. 13-C-0578, 2014 WL 1689717 at *15 (E.D. Wis. April 29, 2014).

These step three findings are not the same as the RFC determination. As the Court explained in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

6

> [T]he ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10.

Here, the ALJ incorporated the relevant portions of the "paragraph B" criteria into the RFC assessment stating in pertinent part:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

PageID.41. As discussed, the ALJ incorporated the "moderate" limitations into the RFC. Specifically, the RFC included the non-exertional limitations that plaintiff "can have no exposure to hazards, such as machinery and unprotected heights" and is "limited to simple, routine tasks with short, simple instructions". PageID.41.

Finally, plaintiff's reliance on *Keeton v. Commissioner*, 583 Fed. Appx. 515, 533-34 (6th Cir. 2014) for the proposition that it is reversible error for an ALJ to find moderate restrictions at Step 3 and then omit those restrictions from the RFC finding at Step 4 is misplaced. Here, the ALJ incorporated the non-specific finding of "moderate" limitations into specific work limitations. *See Palmer v. Commissioner of Social Security*, No. 1:16-cv-660, 2017 WL 2129689 at *4 (W.D. Mich. May 17, 2017) (limiting *Keeton* to situations where "it was 'not clear' whether

the ALJ had incorporated the moderate limitations that were earlier found into the hypothetical and RFC determination"). For these reasons, the ALJ's decision is not internally inconsistent. Accordingly, plaintiff's claim of error should be denied.

### B.    The ALJ mishandled Dr. Sheill's report

Plaintiff's contention that the ALJ "mishandled" non-treating physician Dr. Sheill's report does not state any particular error. Rather, this error appears to be a means for plaintiff to express his disagreement with the ALJ's evaluation of the doctor's opinions. The ALJ addressed the doctor's reports as follows:

> As for the opinion evidence, I give some weight to the April 22, 2014 assessment of Donald Sheill, M.D., that the claimant would be limited in manual labor jobs and he may only be able to perform sedentary work long-term. (Ex. B8F/7). However, I note that the claimant had a stable gait with only a slight limp, was able to walk at a moderate pace, and appeared "reasonably vigorous." (Ex. B8F/6). At the claimant's consultative psychological examination, the claimant told Allison Bush, MS, LLP, and Dennis L. Mulder, Ed. D., that he walks around his house for exercise and tries to stay limber; they also observed that he walked quickly. (Ex. B7F/3). Therefore, while I agree that the claimant cannot perform manual labor jobs, I find that he is capable of light exertional work.
>
> I give less weight to the January 20, 2009 assessment of Dr. Sheill that the claimant appears fit for a heavier job that [sic] selling cars and he did not see the need for substantial work limits. (Ex. B5F/2). He limited the claimant to medium work except that the claimant could sit, stand, and walk for four hours at a time each. (Ex. B5F/7-8). Dr. Sheill also observed that the claimant does not require use of a cane. (Ex. B5F /8). Due to the claimant's walking abilities discussed above, I do not agree that the claimant would be limited to sitting, standing, and walking for only four hours at a time each. (Ex. B7F/3; B8F/6). Additionally, I note that the claimant's condition has worsened since 2009, which is prior to the period at issue. The claimant's 2014 MRI scans document degenerative disc disease, which cause limiting symptoms, including restricted range of motion and tenderness. (Ex. B8F/2; B9F/1-2). I find that the claimant's documented symptoms support limiting the claimant to light work.

PageID.44.

The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling

8

weight, the agency will consider the factors set forth in § 404.1527(c)(1)-(6) in deciding the weight given to any medical opinion. *See* 20 C.F.R. § 404.1527(c). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

As an initial matter, while Dr. Sheill issued two opinions, plaintiff only addresses the doctors second opinion issued on April 22, 2014. Plaintiff's Brief (ECF No. 18, PageID.627-631). As discussed, the ALJ gave weight to Dr. Sheill's conclusions in the 2014 assessment that:

> There are some objective or quasi objective findings on exam that support the impression that he would be limited in manual labor jobs. It may be that sedentary work is all he could handle long-term.

PageID.580. In this regard, the Court notes that plaintiff reported to the doctor that "[h]e does some walking, up to three tenths of a mile at a time, but then requires rest for his right lateral hip." PageID.578. Based on this record, it appears to the Court that the ALJ accepted Dr. Sheill's 2014 report which found that plaintiff could perform more than sedentary work (i.e., light work), with a question as to whether he could sustain it "long-term"[1] and excluded manual labor. Accordingly, plaintiff's claim of error should be denied.

### C. The ALJ mishandled plaintiff's complaints

Plaintiff contends that the ALJ failed to state which symptoms were inconsistent with the medical record as required by the regulations, 20 C.F.R. §§404.1529 and 416.929.

---

[1] The Court notes that the doctor did not define "long-term".

9

Plaintiff contends that the ALJ "does not tell us which symptoms are supposed to be inconsistent; does not identify the evidence with which the symptoms supposedly conflict; does not attempt to explain how and why the evidence conflicts; does not state which way he is resolving the asserted inconsistency; and gives no justification for resolving any inconsistency against Plaintiff's version." Plaintiff's Brief at PageID.634. Plaintiff sets forth a list of his "uncontradicted" and "conclusive complaints" which he stated during the two administrative hearings held on November 25, 2014, and August 10, 2016. PageID.58-81, 83-107. These complaints include: "Plaintiff can stand only 30 minutes at a time (PageID.64, 90) and no more than three hours out of eight (PageID.91)"; "Plaintiff sits sideways (PageID.88), with his leg extended (PageID.63), which precludes sitting in pews (PageID.64)"; "He can't sit long (PageID.71): under three hours out of eight (PageID.90)"; "Plaintiff cannot use his arm above shoulder level (PageID.65, 94)"; "Due to numbness in his hand, Plaintiff cannot tell whether he has a good grip on something, causing him to drop things (PageID.65, 67, 75-76, 95, 97)"; "Plaintiff had to nap during the day in 2014 (PageID.70) and lie down in 2016 (PageID.89)"; "Plaintiff has had to leave or skip work 20 days in an eight-month period (PageID.98)"; "Plaintiff was 'inoperable' 3-4 days per week in 2013 (PageID.90), 4-5 days per week in 2016 (PageID.89)"; and "In short, Plaintiff cannot handle any full-time job" (PageID.72, 94).

       As an initial matter, the ALJ explained the process for determining plaintiff's RFC:

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

PageID.41.

The relevant regulations cited by the ALJ ("How we evaluate symptoms, including pain") provide in part:

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work[.]

20 C.F.R. §§ 404.1529(a) and 416.929(a).

The ALJ summarized plaintiff's current claims as follows:

> The claimant alleged disability due to low back pain, left leg pain, carpal tunnel syndrome in the right hand, left arm pain, and ADHD. (Ex. B3E/2). He reported that he stopped working on December 2, 2008 due to his conditions. (Ex. B3E/2). The claimant testified that he is unable to work due to chronic neck, back, and hip pain, which have caused difficulties with sleeping and concentrating. He said can sit for up to two hours as long as he could change positions. He could also stand or walk for two to three hours in a day. However, if he experienced an episode of extreme pain, he would not be able to do basic activities the following day. The claimant testified that he takes Vicodin, Ritalin, Neurontin, and ibuprofen and that he experiences drowsiness as a side effect.

PageID.42-43.

The ALJ determined that the plaintiff's allegations of disabling impairments was neither supported by, nor consistent with, the medical evidence:

> However, the medical evidence of record does not support the claimant's alleged disabling symptoms. First, the claimant reported doing vigorous activity during the relevant period, including pushing a tractor. (Ex. B6F/13). Second, at the consultative examinations, the claimant's examinations did not reveal significant objective findings that would limit the claimant beyond light work with additional postural restrictions. At the claimant's April 2014 consultative psychological examination, the claimant was able to ambulate independently and walked quickly with a slight limp. (Ex. B7F/3). At the consultative medical examination a few days later, Dr. Sheill also observed that the claimant had a stable gait within normal limits, but he had an antalgic gait on the left. (Ex. B8F/2). Additionally, the claimant was also able to walk on heels and toes as well as tandem walk. (Ex. B8F/2). Finally, the claimant's ADHD generally has been well controlled with medication. (Ex. B6F/8; B7F/4; B8F/5; B9F/6, 8).

As a result, the claimant's documented degenerative disc disease supports limiting him to light work with occasional stooping, kneeling, crouching, and crawling. Additionally, because of the claimant's long term use of narcotic pain medication, the above residual functional capacity assessment supports that he cannot climb vertical ladders, ropes, or scaffolds and should have no exposure to hazards, such as machinery and unprotected heights. Due to the claimant's difficulties with concentration, as discussed above, the claimant is also limited to simple, routine tasks with short, simple instructions.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; *however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision*.

PageID.43 (emphasis added).

The ALJ also addressed plaintiff's use of his upper extremities:

I give some weight to the opinion of State agency medical consultant, Eric VanderHaagen, D.O., limiting the claimant to light [sic] except frequent pushing and pulling with the left lower extremity; frequent overhead reaching with the right upper extremity; frequent climbing of ramps and stairs, balancing, kneeling, crouching, and crawling; occasional stooping and climbing of ladders, ropes, and scaffolds. (Ex. B4A/11-12; B5A/11-12). This opinion was issued prior to the claimant's most recent MRI scans in December 2014, which confirm the claimant's degenerative disc disease, and supports that he can perform postural activities only occasionally. (Ex. B9F/1-2). However, I note that the claimant's left limp has not impeded the claimant's ability to walk quickly as discussed above. (Ex. B7F/3; B8F/6). Additionally, I note that examining physician, Dr. Sheill did not limit the claimant's use of his right arm based on his limited range of motion to 150 degrees. (Ex. B8F/3, 7). Therefore, I do not agree with the additional limitations regarding the claimant's extremities.

PageID.44-45.

The undersigned rejects plaintiff's contention that the ALJ had to adopt all of the listed "uncontradicted" statements.[2] The issue before the Court is whether the ALJ erred by failing

---

[2] Among the uncontradicted statements listed in plaintiff's brief is the statement that "In short, Plaintiff cannot handle any full-time job". PageID.637. Plaintiff's actual testimony is as follows:

to address plaintiff's alleged disabling symptoms as required under the regulations. "There is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Commissioner of Social Security*, 336 F.3d 469, 475 (6th Cir. 2003). This being said, plaintiff has provided no authority for his proposition that the ALJ's decision must respond to each statement uttered by a claimant at an administrative hearing which relates to an alleged impairment. On the contrary, "[n]either the ALJ nor the [Appeals] Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Commissioner of Social Security Administration*, 397 Fed. Appx. 195, 199 (6th Cir. 2010). In short, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999), quoting *NLRB v. Beverly Enterprises-Massachusetts*, 174 F.3d 13 (1st Cir. 1999). *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (applying *Loral Defense Systems-Akron* to ALJs in Social Security cases).

Here, the ALJ held a second administrative hearing on remand. His second decision summarized plaintiff's claims, reviewed the medical record, and determined that plaintiff did not suffer from a disability. Based on this record, the Court concludes that the ALJ complied with the relevant regulations during this process. Accordingly, plaintiff's claim of error should be denied.

---

Q. Do you think you could report to any kind of job, say, and be there eight hours a day, five days a week?
A. No, absolutely not. If I could, I would already have. I would love to.

PageID.72. The ALJ cannot simply accept this statement as true and award benefits to plaintiff. "[T]he ultimate determination of disability is a matter reserved to the Commissioner." *Gaskin v. Commissioner of Social Security*, 280 Fed. Appx. 472, 475 (6th Cir. 2008).

### D. The ALJ failed to address regional jobs.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a vocational expert (VE) in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004). Here, the ALJ adopted the VE's conclusion that a person with plaintiff's limitations could perform 130,000 jobs in the national economy. PageID.46-47. Plaintiff did not dispute the VE's testimony at the hearing. PageID.108. Now, plaintiff seeks a reversal and remand due to the insufficiency of the VE's testimony.

This Court has concluded that such a failure to contest the VE's testimony results in a waiver of that claim in a subsequent appeal:

> "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:11–cv–1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012) (citing *Hammond v. Chater*, No. 96–3755, 1997 WL 338719, at *3 (6th Cir. June 18, 1997) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal)); *see Lyon v. Comm'r of Soc. Sec.*, No. 1:11-cv-1104, 2013 WL 1149967, at *4 (W.D. Mich. March 19, 2013) (the plaintiff's challenge to the VE's testimony was waived because she failed to object to the testimony at the administrative hearing).

*Spohn v. Commissioner of Social Security*, No. 1:16-cv-952, 2017 WL 2838235 at *5 (W.D. Mich. July 3, 2017).

Even if plaintiff had objected at the hearing, the ALJ did not err by relying on the VE's testimony that plaintiff could perform 130,000 jobs nationally. As an initial matter, "[t]he

Commissioner is not required to show that job opportunities exist within the local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). The relevant statute provides that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The "national" numbers of jobs identified by the VE are presumed to constitute work existing in several regions in the country. *See Gutierrez v. Commissioner of Social Security*, 740 F.3d 519, 529 (9th Cir. 2014) (nationwide figures are assessed "in the context of 'several regions of the country'").

In addition, the regulations provide in pertinent part that:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. § 404.1566(b). Plaintiff has not demonstrated that the identified jobs, *i.e.*, mail clerk, office helper, and assembly machine tender are "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [he lives]." *See id*. *See also*, *Gutierrez*, 740 F.3d at 529 ("A finding of 25,000 jobs likely does not fall into the category of 'isolated jobs' existing in 'very limited numbers.'"). The 130,000 total jobs identified by the VE

constitute a significant number of jobs to support the ALJ's decision. Accordingly, plaintiff's claim of error should be denied.

### IV.   RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: July 9, 2019                              /s/ Ray Kent
                                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).